# United States Bankruptcy Court
## District of Massachusetts

|  |  |
|---|---|
| In re:<br><br>DENISE J. EDDY,<br><br>      Debtor. | Chapter 7<br>Case No. 01-46141-HJB |
| INTERNATIONAL<br>ENTERPRISES, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>DENISE J. EDDY,<br><br>      Defendant. | Adversary Proceeding<br>No. 03-04051 |
| JOHN A. BURDICK, JR.,<br>    Chapter 7 Trustee,<br><br>      Plaintiff,<br><br>v.<br><br>CLASSIC ASSET LIQUIDATION<br>MANAGEMENT, LLC,<br><br>      Defendant. | Adversary Proceeding<br>No. 04-04297 |

## MEMORANDUM OF DECISION

Before this Court is the "Motion of International Enterprises, Inc. for Entry of Default Judgment Pursuant to the Court's Order of September 23, 2005," filed in its adversary proceeding against Denise J. Eddy (the "Debtor"). Also under consideration is the "Motion

of John A. Burdick, Jr., Chapter 7 Trustee, for Civil Contempt and Sanctions," filed in the Debtor's underlying bankruptcy case, but seeking sanctions against the Debtor, including, *inter alia*, entry of a default judgment in an adversary proceeding brought by the Chapter 7 Trustee against Classic Asset Liquidation Management, LLC. ("Classic Asset"), a company formed, owned and controlled by the Debtor. Each motion requests relief on account of the Debtor's failure to comply with discovery orders, dated September 23, 2005. The Debtor, in her individual capacity and as the sole manager of Classic Asset, opposes each motion.

I.      FACTS & TRAVEL OF THE CASE

International Enterprises, Inc. ("IEI"), an Ohio corporation, is in the business of retail liquidations. As part of its business, IEI purchases inventory at liquidation for resale to wholesalers. Prior to March of 2000, the Debtor performed services as an independent contractor for IEI. In March 2000, IEI and the Debtor entered into certain agreements, pursuant to which IEI agreed to pay the Debtor commissions if she identified business (liquidation) opportunities for IEI. According to IEI, the Debtor was to act as an intermediary between IEI and a proposed seller. She would provide IEI with a sales quote and, if acceptable, IEI would finance the purchase by wiring the necessary funds into an account controlled by the Debtor.

Some time after entering into the agreements, IEI filed suit against the Debtor in the Ohio Court of Common Pleas (the "Ohio Litigation"), claiming that the Debtor had defrauded IEI by misrepresenting the purchase price for certain Bugle Boy clothing items. IEI claimed to have discovered after the purchase that the price quote communicated to

IEI by the Debtor was greater than true cost to purchase the goods, and that the Debtor had pocketed the difference. IEI prevailed in the Ohio Litigation when, on June 8, 2001, the Ohio court awarded a default judgment against the Debtor in the amount of $423,818 plus interest.

On October 4, 2001, the Debtor filed an individual petition under Chapter 11 of the Bankruptcy Code.[1] At the § 341 meeting of creditors, the Debtor represented that she was then a shareholder of and controlled a company by the name of "CAE Marketing, Inc." ("CAE"), a distributor of luggage and apparel and located in Framingham, Massachusetts.[2] While the Debtor contended that the revenues of CAE were not, strictly speaking, property of the Chapter 11 estate, she testified that she was drawing approximately $7,000 per month from CAE to cover her salary and business-related expenses. The Debtor did not disclose at that time, however, that CAE had been involuntarily dissolved by the Massachusetts Secretary of State on August 31, 1998.[3] Monthly Operating Reports filed with the United States trustee[4] for the period of October 2001 through June 2002, reflect the distributions made to the Debtor, but not the gross revenues generated by CAE.

---

[1] Unless otherwise stated, all statutory references are to Title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code" or the "Code").

[2] The Debtor-controlled account into which IEI had wired funds in connection with the March 2000 agreements with the Debtor was held under the name "CAE Marketing Classic Brands Capital."

[3] The Debtor denies that she was aware of the corporate dissolution until it was brought to her attention on October 11, 2002, when referenced in a motion filed by IEI for leave to conduct a Rule 2004 examination of the Debtor.

[4] Such reports are required to be filed by all Chapter 11 debtors in accordance with guidelines promulgated by the United States trustee.

On May 7, 2002, during the course of her Chapter 11 case, the Debtor formed a new company, Classic Asset Liquidation Management, Inc. ("Classic Asset"), incorporated under the laws of the Commonwealth of Massachusetts. The Certificate of Organization identifies the Debtor as the sole manager. The Debtor did not seek or obtain approval from this Court to form the new company, nor did she disclose its formation or the revenues accruing therefrom to the United States trustee or even to the attorney authorized to represent her in the Chapter 11 case.[5]

Throughout the duration of her Chapter 11 case, the Debtor failed to file a Chapter 11 plan of reorganization. She also failed to file Monthly Operating Reports with the United States trustee for the period of July 2002 through October 2002, and refused to provide other interested parties, including IEI, with additional requested documents. On October 15, 2002, the Court allowed IEI's motion to convert the case to Chapter 7, for cause,[6] citing

---

[5] The Debtor was represented by Attorney Walter Lupan - and not the attorney approved by the Court - with respect to the incorporation of Classic Asset. Despite her pending bankruptcy case, no application to this Court was ever filed for the employment of Attorney Lupan. As a further oddity, the Debtor had previously listed, as an asset in her schedules, a legal malpractice claim against Attorney Lupan, arising from his services in connection with the Ohio Litigation. When asked why no application to employ had been filed, the Debtor responded that Attorney Lupan was not compensated for his services. And when asked why he would represent a client who had listed a malpractice claim against him in her schedules, Attorney Lupan raised a concern that the attorney-client privilege protected his communications with the Debtor relative to their compensation arrangement, the malpractice claim, and the formation of Classic Asset. The Trustee and IEI then filed a joint motion asking this Court to determine whether the Trustee had the authority to waive the Debtor's privilege with respect to these matters. In In re Eddy, 304 B.R. 591 (Bankr. D. Mass. 2004), this Court held that Debtor's attorney-client privilege did not apply to attorney compensation discussions during the Chapter 11 case or to issues relating to the administration of property of the estate while the Debtor served as debtor in possession. The Court is not aware of the results of subsequent efforts at discovery (other than those complained of here) and the history of the case thereafter sheds no light on the curious business relationship between the Debtor and Attorney Lupan.

[6] Section 1112(b) authorizes the Court to convert a case from Chapter 11 to Chapter 7 for cause, and provides, in relevant part:

the Debtor's failure to file the missing Monthly Operating Reports; her failure to tender a $25,000 settlement payment to IEI, notwithstanding a stipulation between the parties approved on August 27, 2002; and her formation of Classic Asset in violation of various provisions of the Bankruptcy Code, including, without limitation § 363(b). John A. Burdick (the "Trustee") was appointed as the Chapter 7 Trustee. At that same October hearing, the Court also granted IEI's motion for leave to conduct a Rule 2004 Examination of the Debtor, not only because it was unclear whether the Debtor had been reporting all of her revenues, but also to determine whether and to what extent the Debtor may have diverted funds from her bankruptcy estate to Classic Asset.

On March 12, 2003, IEI filed an adversary proceeding to except its claim from discharge, pursuant to § 523(a)(6) and (8), and to deny the Debtor a discharge under § 727(a)(2)-(4) (the "Discharge Litigation"). In the Discharge Litigation, IEI claims that the debt owed as a result of the Ohio default judgment should be deemed non-dischargeable under § 523(a)(4) and (6), because the behavior of the Debtor described in the Ohio Litigation was both grounded in fraud and was willful and malicious towards IEI. IEI also claims that the Debtor should be denied a discharge under § 727(a)(2), on account of her alleged attempt to defraud her creditors by transferring assets to Classic Asset post-

---

> Except as provided in subsection (c) of this section, on request of a part in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including –
>
>   . . .
>
>   (3) unreasonable delay by the debtor that is prejudicial to creditors.
>   . .

11 U.S.C. § 1112(b)(3).

petition; under § 727(a)(4), on account of her alleged failure to disclose revenues generated by Classic Asset and her allegedly false statements made at her § 341 meeting; and, under § 727(a)(3), on account of her alleged failure to maintain financial records for Classic Asset.[7]

On February 13, 2004, the Trustee initiated an adversary proceeding against Classic Asset, seeking a turnover of all assets allegedly transferred from the Debtor to Classic Asset without court authorization (the "Classic Asset Litigation"). The Debtor denies diverting any Chapter 11 funds or otherwise using any property of the Chapter 11 estate for improper purposes, including for the benefit of Classic Asset.

Throughout their respective adversary proceedings, IEI and the Trustee have sought information and various documents from the Debtor, including those relevant to the period from July through October of 2002. Their efforts have been largely unavailing. Accordingly, on September 6, 2005, at a hearing on the Trustee's motion to compel the Debtor to file the missing Monthly Operating Reports, the Court issued the following Order:

> The Debtor is ORDERED to deliver to the Chapter 7 Trustee on or before September 23, 2005 her operating reports for July, August, September and October, 2002; and bank statements for the months of September and October, 2002.

(The "Discovery Order"). On September 22, 2005, the Debtor filed a motion to extend the Discovery Order deadline. As grounds therefor, the Debtor stated that she was in Arizona and was ordered by her doctor not to fly because of various medical ailments, including

---

[7] The § 727(a)(3) count is first referenced in an amended complaint filed by IEI in the Discharge Litigation, with leave of this Court granted on November 29, 2004. The Debtor has yet to file an answer to the amended complaint.

phlebitis. On September 23, 2005, the Court granted the Debtor's motion and extended the deadline to November 4, 2005 (the "Amended Discovery Order"), but warned:

> There will be no further extensions or continuances absent extraordinary circumstances. In the event that the Debtor fails to comply with the November 4, 2005 deadline, the Trustee is directed to promptly file a motion requesting that the Debtor be held in civil contempt of the September 6, 2005 Order, as here amended, without waiver of any request by Plaintiffs in the aforesaid Adversary Proceedings [the Discharge and Classic Asset Litigations] to request the issuance of additional sanctions, including, without limitation, a default judgment.[8]

The Debtor failed to produce the required Monthly Operating Reports and bank statements by November 4, 2005.[9] On or about November 7, 2005 (three days after the Court-ordered deadline), counsel to the Debtor forwarded to the Trustee and counsel to IEI *some* bank account statements that the Debtor's sister had found in the Debtor's home office in Framingham. Later, on November 29, 2005, upon the Debtor's return to Massachusetts for the Thanksgiving holiday, the Monthly Operating Reports for the months of July through October of 2002 were created and forwarded to the Trustee and IEI. However, long before that submission, on November 8, 2005, the instant motions were filed, each based on the Debtor's failure to comply with the Amended Discovery Order.

## II.    POSITIONS OF THE PARTIES

The Trustee and IEI each contend that sanctions, in the form of a default judgment, should be imposed against the Debtor for her failure to timely comply with this Court's

---

[8] IEI appeared in support of that motion and the Court entered the order in both the main bankruptcy case and in the Discharge Litigation without objection by the Debtor.

[9] On September 22, 2005, counsel to the Debtor mailed a letter to one of the Debtor's banks, Citizen's Bank, requesting financial records from July through October of 2002. The Debtor claims that there was no response to this letter.

Amended Discovery Order. IEI argues that the Debtor "willfully failed to comply with the Discovery Order by refusing to file her past due Monthly Operating Reports and neglecting to file a motion for an extension of time to do so." IEI complains that even the bank account statements, belatedly provided by counsel to the Debtor on November 7, 2005, were from the Debtor's *personal* accounts, rather than from accounts for Classic Asset. At the hearing on the instant motions, and after having finally received and reviewed the Monthly Operating Reports provided by the Debtor on November 29, 2005 (twenty-five days after the Court-ordered deadline), counsel to IEI stated that they were inadequate and lacking the very information required by the Trustee and IEI to determine the amount of funds that were allegedly diverted to Classic Asset. Specifically, the Monthly Operating Reports supplied no completed balance sheet; no completed income statement; no accounts receivable report or incomplete reports; no post-petition liabilities; and, incomplete sources and uses of cash.

The Debtor "accepts that she bears certain responsibility for not being able to timely obtain financial records from the banks," but attributes her failure to her inability to travel to Massachusetts. She contends that the Monthly Operating Reports provided were adequate and complete, and asserts that neither IEI nor the Trustee were prejudiced by the Debtor's failure to comply with the Amended Discovery Order deadline because she got the requested information to them by November 29, 2005; the trial date for both adversary proceedings had already been extended to February 9, 2006,[10] leaving more than enough time for trial preparation.

---

[10] In light of the pendency of the instant motions, the trial date was later *sua sponte* continued generally.

The Debtor insists that she has been consistently cooperative, "providing both the Chapter 7 Trustee and counsel for [IEI] with all relevant discoverable information they requested during the course of the two Adversary Proceedings in issue." She maintains that:

> There are no facts to suggest that Ms. Eddy or her attorney acted willfully or in bad faith. To the contrary the Debtor, through her counsel, sought, in good faith, to obtain documents from Citizens Bank even prior to the issuance of the September 23, 2005 Order.

Furthermore, the Debtor submits that she has a meritorious defense. She maintains that the Monthly Operating Reports now filed represent that she used all funds available to her from July through October of 2002 for her personal living expenses. And finally, with respect to the Classic Asset Litigation, the Debtor asserts that a default judgment will not advance the rights of the estate. A judgment requiring her to turn over all amounts received by Classic Asset from the estate will still not establish what that amount should be.

The Debtor acknowledges her failure to comply with the Amended Discovery Order deadline. However, she maintains that "an entry of default judgment against her would be a disproportionately harsh sanction." The Debtor submits that a more appropriate sanction would be an order requiring her to reimburse the Trustee and counsel to IEI for the costs associated with bringing the instant motions, " and such other fine as this Court may deem appropriate."

## III. DISCUSSION

### A. Default Judgment

This Court has "broad authority to impose sanctions in discovery matters." In re Bushay, 327 B.R. 695, 701 (B.A.P. 1st Cir. 2005). That authority expressly includes the power to respond to a party's failure to comply with discovery orders by entering:

> An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, *or rendering a judgment by default against the disobedient party. . .*

Fed. R. Civ. P. 37(b)(2)(C) (emphasis supplied); see also, Fed. R. Bankr. P. 7037.

A bedrock principle in this Circuit is that a party who fails to comply with a court order does so at his or her own jeopardy. Torres-Vargas v. Pereira, 431 F.3d 389, 393 (1st Cir. 2005); Rosario-Diaz v. Gonzalez, 140 F.3d 312, 314 (1st Cir. 1998). Where a disobedient party is provided with adequate warning that his or her noncompliance with an unambiguous order will likely lead to drastic consequences, the court is not required to exhaust less severe sanctions before either dismissing or entering a default judgment. Torres-Vargas, 431 F.3d at 393 (citing, inter alia, Young v. Gordon, 330 F.3d 76, 82 (1st Cir. 2003)); In re Bushay, 327 B.R. at 704 ("it is well settled in the First Circuit that a trial judge does not need to exhaust milder sanctions before resorting to dismissal when a noncompliant litigant has disregarded court orders and been suitably forewarned") (citing, Top Entm't, Inc. v. Ortega, 285 F.3d 115, 119 (1st Cir. 2002); Figueroa Ruiz v. Alegria, 896 F.2d 645, 649 (1st Cir. 1990); Farm Constr. Servs., Inc. v. Fudge, 831 F.2d 18, 20 (1st Cir. 1987); and, Damiani v. Rhode Island Hosp., 704 F.2d 12, 15 (1st Cir. 1983)).

The actions of the Debtor here are very similar to those of the disobedient plaintiff in Torres-Vargas v. Pereira, where the district court's discovery order had warned that noncompliance would result in dismissal with prejudice. 431 F.3d at 391. The Torres-Vargas plaintiff filed the discovery documents one day after the deadline set by the order and what he did file was inadequate, despite his representation to the contrary. Id. at 393. The First Circuit affirmed the district court's dismissal of the case as an appropriate sanction for the plaintiff's failure to comply with the discovery order.

> Using dismissal [or default judgment] in such a case recognizes the court's strong interest in maintaining discipline and husbanding scarce judicial resources; after all, such a sanction not only serves to punish the noncompliant litigant but also acts as a deterrent to those who might be tempted to emulate a bad example.

Id. (citing, Nat'l Hockey League v. Metropolitan Hockey Club, Inc._, 427 U.S. 639, 643 (1976) (recognizing dismissal, or similarly default judgment, as "the most severe in the spectrum of sanctions provided by statute or rule," the Court emphasized that harsh sanctions served as both a penalty against the offending party and as a deterrent for others)).

Whether a party's conduct warrants the harshest of sanctions, such as dismissal (where the offending party is the plaintiff) or default judgment (where, as here, the offending party is the defendant) requires a case-by-case evaluation of all of the attendant circumstances. Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002). In In re Bushay, the First Circuit Bankruptcy Appellate Panel elucidated three factors that the trial court should consider:

> (1) the existence of a pattern of dilatory and willful misconduct;
> (2) prejudice suffered by other party's as a result of the misconduct; and

-11-

(3) the potential for effectiveness of alternative sanctions.

327 B.R. at 704-05.

That the Debtor's misconduct here was willful is beyond reasonable dispute. Since the onset of her Chapter 11 case, the Debtor has consistently failed to make required filings with the court or provide relevant documents to parties of interest, or has done so only in a dilatory fashion. During the year that her bankruptcy case was administered under Chapter 11, the Debtor never filed a Chapter 11 plan. She failed to file required Monthly Operating Reports for four months in a row. She was unresponsive to IEI's attempts to settle its claim against her, and when she did finally respond and a settlement agreement was approved, she failed to comply with it. And, a fact most troubling to this Court, the Debtor incorporated a new post-petition business, Classic Assets, without providing the requisite notice to any interested parties or even to this Court. Not surprisingly, the Court converted the case from Chapter 11 to Chapter 7 for the very reason that unreasonable delay by the Debtor was prejudicing her creditors. See, 11 U.S.C. § 1112(b)(3).

With respect to the Discharge and Classic Asset Litigations, Debtor's behavior has been no different. The Debtor has *yet* to file an answer to the amended complaint in the Discharge Litigation.[11] In the Classic Asset Litigation, Debtor's answer to the complaint was filed late without any motion seeking leave to extend the deadline. At a pretrial

---

[11] The certificate of service filed with IEI's motion for leave to amend its complaint, to which the amended motion was attached, certifies that a copy of that motion was mailed to the Debtor on November 15, 2004. Allowing the Debtor the benefit of three days for mail delivery, an amended answer would have been timely if filed on or before November 28, 2004. See, Fed. R. Civ. P. 15(a); see also, Fed. R. Bankr. P. 7015.

conference in the Classic Asset Litigation, held on August 17, 2004, counsel to the Debtor informed the Court that he was, up to that time, unable to file certain required documents, such as the Debtor's initial pre-trial disclosures, because the Debtor would not respond to *his* inquiries. In light of the Debtor's utter lack of cooperation or respect for the Court, her adversaries, or even her attorney, the Court finds her assertion that she "was always willing to cooperate" patently absurd.[12]

The Debtor maintains that she took steps, prior to the original September 23, 2005 deadline, to obtain necessary bank records from Citizens Bank. But sending a letter on September 22, 2005, which would not have been *received* until after the not-yet-extended expiration date, is hardly compelling evidence of a good faith attempt to comply with the deadline. And the Debtor's allegation that she sent her sister to look for required documents in her office is not enough to convince this Court that the Debtor was sincerely attempting to comply with the Amended Discovery Order, particularly where counsel to the Debtor informed the Court that he did not receive the documents found by the sister until November 7, three days *after* the expiration of the November 4, 2005 deadline.

The Amended Discovery Order did not absolutely foreclose the possibility of a further extension, but rather made one contingent upon the existence of "extraordinary circumstances." Yet no further request for an extension was filed, and nothing said since has persuaded the Court that the Debtor's circumstances were "extraordinary." With respect to her most recent excuse for untimely compliance - the Debtor's alleged health

---

[12] While not a factor in this Court's decision, it is interesting to note that IEI is a creditor of the Debtor due to the fact that it prevailed on its claim in the Ohio Litigation because of the Debtor's failure to appear at her own trial.

problems - she offered no affidavit, nor even an unsworn medical report, to validate her excuse.

It is equally clear that both IEI and the Trustee have been prejudiced by the Debtor's failure to comply timely with the Amended Discovery Order. The Debtor contends that since the Trustee and IEI eventually received the information sought, still more than two months prior to trial, no prejudice to their cases resulted. However, the essence of the Debtor's non-compliance with the Amended Discovery Order was her failure to provide information with respect to a critical period during the Chapter 11 case in which she operated an undisclosed business. While the Debtor did provide some records, the information central to the Classic Asset and Discharge Litigations was never furnished. The Trustee and IEI were highly prejudiced, insofar as they could not properly prepare for their respective trials without the information necessary to determine the extent to which the Debtor may have diverted funds to Classic Asset. Even more important, the Trustee can still not be sure that all of property of the estate is under his control.

This Court has no confidence that an alternative sanction to default judgment would be effective as against the Debtor. The Debtor's procrastination and her failure to comply with the Amended Discovery Order is egregious. The Debtor concedes that she failed to comply with this Court's Order, but asks the Court to simply levy a fine in the amount of attorneys' fees and expenses to compensate IEI and the Trustee for their time and money spent attempting to procure the missing Monthly Operating Reports and bank statements. The Court is unpersuaded that allowing the Debtor to determine her own sanctions is appropriate under these circumstances. The Debtor has already defaulted on a monetary

settlement with IEI, suggesting that she is not readily deterred from violating the terms of and suffering the consequences created by her own consensual agreements. Moreover, the imposition of a mere monetary sanction would not serve the purpose of deterring other litigants from mimicking the Debtor's behavior. Nor will a monetary penalty necessarily undo the harm to the IEI or the bankruptcy estate, as the Debtor has yet to comply with the Amended Discovery Order.

The First Circuit has recently restated that "'extreme conduct,' which by definition entails the knowing disobedience of a court order," warrants the imposition of a Rule 37(b) sanction, such as entry of default judgment. Rivera Diaz v. Am. Airlines, Inc., 433 F.3d 120, 122-23 (1st Cir. 2005). The Debtor has an unvarying history of dilatory behavior and willful misconduct. She has failed to fully comply with the unambiguous Amended Discovery Order, which unequivocally provided the Debtor fair warning of a potential default judgment in the event of her noncompliance. See Torres-Vargas, 431 F.3d at 393. What information the Debtor did disclose was provided twenty-five days beyond the deadline, and without even the effort to obtain an extension of the deadline. The Debtor has forfeited her right to a defense. A default judgment shall be entered against her in the Discharge Litigation and, consequently, she will be denied her discharge pursuant to § 727(a)(2), (3) and (4), as requested by IEI. IEI's request that its claim be deemed nondischargeable, pursuant to § 523(a) is correspondingly moot.

**B.    Civil Contempt and Sanctions**

The selection of a remedy for the Trustee in the Classic Asset Litigation is not quite as straightforward as the selection of a remedy for IEI in the Discharge Litigation. Of

course, there is no doubt with respect to this Court's authority. Pursuant to § 105(a), a bankruptcy court has the authority to impose civil contempt sanctions for failure to comply with a prior court order. Eck v. Dodge Chem. Co. (In re Power Recovery Sys., Inc.) 950 F.2d 798, 802 (1st Cir. 1991); 11 U.S.C. § 105(a).

The Trustee asks first that the Court hold the Debtor in civil contempt of the Amended Discovery Order, and second that the Court enter default judgment against her as the sanction for such contempt. "Consideration by a bankruptcy court of a civil contempt motion will encompass only two issues: whether the alleged contemnor knew of the order and whether he complied with it." Boyajian v. Rhode Island Pub. Transit Auth., 198 B.R. 639, 642 (Bankr. D. R.I. 1996). It is undisputed that the Debtor was aware of the Amended Discovery Order, and undisputed that she failed to comply with it. The Debtor's various excuses for her noncompliance with the Amended Discovery Order are not only lacking in credibility, but fall far short of any acceptable defense that she was truly unable to comply. See, In re Power Recovery Sys., Inc., 950 F.2d at 803 ("self-induced" inability to comply does not establish the defense of impossibility). Based on the findings set forth above, the Court finds and rules that the Debtor is in civil contempt of its order of September 6, 2005, as amended on September 23, 2005.

In her opposition, the Debtor notes that a default judgment in the Classic Asset Litigation will still not get the Trustee the information he needs. The Debtor is absolutely right about that. Denial of the Debtor's discharge does not relieve the Debtor of her duty to cooperate with the Trustee so that he can meet one of his primary responsibilities - to expeditiously collect, liquidate, and distribute nonexempt estate assets. See, 11 U.S.C.

§ 521(3). Entry of default judgment will not properly redress the harm done to the Trustee since he still is without the information necessary for him to administer the bankruptcy estate - the extent of which remains unknown. This Court must fashion sanctions that will sufficiently induce the Debtor to finally comply with the Amended Discovery Order.

Accordingly, unless the Debtor fully complies with the Amended Discovery Order by March 31, 2006, the Court will assess monetary sanctions against the Debtor in the amount of $100.00 per day thereafter until the Debtor's compliance is complete. See, In re Power Recovery Sys., Inc., 950 F.2d at 802 ("[w]here the purpose of a monetary sanction is to make the defendant comply, the court has wide discretion in considering the character and magnitude of the harm threatened by the continued contumacy, and the probable effectiveness of any suggested sanction in bringing about compliance and the like") (citations omitted). The Court will also schedule a follow-up status conference on the state of the Debtor's compliance. If, at that time, the Debtor remains in civil contempt, the Court will explore whether further actions are necessary in order to motivate the Debtor's compliance.

## IV.   CONCLUSION

For all the foregoing reasons, the "Motion of International Enterprises, Inc. for Entry of Default Judgment Pursuant to the Court's Order of September 23, 2005" is GRANTED, insofar as the Debtor's discharge is DENIED. The balance of the relief sought by IEI is MOOT. The "Motion of John A. Burdick, Jr., Chapter 7 Trustee, for Civil Contempt and Sanctions" is GRANTED, as set forth above.

Separate orders in conformity with this Memorandum of Decision shall enter herewith.

DATED: March 16, 2006                    By the Court,

                                         _____
                                         Henry J. Boroff
                                         United States Bankruptcy Judge